And last on the calendar today, I hope I'm pronouncing this correctly, Bourbeau v. Cognitive Code Corp. Now Council, as you're approaching, there are a whole lot of issues raised in these briefs. We have the time on the clock, we're not going to go over in this case, I want to make sure Council focuses on the issues that they really believe are the most important issues in the case. Okay? Because again, there are lots and lots of issues, stick to the ones that you think are most crucial, and stick to the clock. And with that, I do see, I just want to make sure for argument purposes, before we start the clock, you are Council? John Wallace. And you represent? Appellant John Bourbeau. Okay. And is this, and you're Mr. Robert Rosen representing Mr. Bourbeau also, Your Honor. Okay, great. There was a question whether we're going to have two different people arguing, so just the one. Correct, Your Honor. Very well, thank you. May it please the Court, again, John Wallace, just for John Bourbeau. There is also another appellant, Michigan Attorney Joseph Otish, we do not represent him. Okay. The, and I, if I may reserve time for rebuttal, the District Court granted summary judgment to defendants, and by doing so allowed the rescission of a number of contracts. Bourbeau suffered as well as, Bourbeau, a non-attorney suffered as well as Otish on that. The judgment cannot stand, should not stand, as to Bourbeau. First of all, the question is whether the facts set forth as undisputed were in fact undisputed by Bourbeau. Apparently Otish didn't file the required statement, Bourbeau did. The Court concluded, the Court may assume that the undisputed material facts as claimed and inadequately supported by defendants are admitted to exist without controversy. Without no, that's because the Court indicated Otish did not file an opposition to defend statement of uncontroverted facts. Bourbeau filed such a statement. So when one considers the inference here, the Court overlooked Bourbeau's filing and, in general, doubts, which the question is whether the District Court considered Bourbeau's filing, are resolved in favor of Bourbeau, and every inference is to favor Bourbeau, and we're dealing with a due process right to be heard issue. One files something, it's not considered, it's not mentioned in the decision. Defendants come back and say, yes, but the Court mentioned there was some points from that the Court referenced, but those were undisputed items. Bourbeau contested some very basic issues in this question of, in this basic issue of rescission, and that is the delay by the defendants, the prejudice to Bourbeau, and also the ratification of Bourbeau's interest. After defendants were on inquiry notice, after defendants had actual knowledge of the basis to rescind, and after defendants hired new counsel. And so, just so we can kind of frame this a little bit, counsel, it seems to me that you're arguing right now about the so-called ratification and waiver arguments. Is that right? My argument is that facts were controversial, and those are examples, main examples. But facts pertaining to waiver and ratification, that's what you're talking about, right? I mean, there are other facts. So, for example, that Mr. Odish had a conflict and didn't comply with the requirements of California law in advising his, I'll go ahead and say client in this context, because you're acting as counsel for cognitive. Those facts aren't disputed. We're trying to focus on what it is that's disputed and what issues that pertains to. So, for example, I hear you talking about, and the examples you've offered have to do with the waiver and ratification argument. That is, that there was a point in time at which the client knew the facts it needed to know to be able to rescind, and you argue that they didn't do what they needed to do to exercise the power of rescission. But before that point in time, are there facts that were disputed? Oh, if there are, if something is to be returned to the district court, we want to define as precisely as we can what it is that's open to contest. Yes. Odish, on the record, said, I disclosed these things, I just didn't do it in writing. And he contends Michigan doesn't require writing, California does. So the question really is, how severe is this as undue influence as to Odish? So even that is contested because Odish says, and I think on summary judgment, since his credibility is an issue. Well, if California law requires it to be in writing and it wasn't in writing, the question as to whether it was in writing is not contested. So the court could say, as a matter of law, California law applies, it's not in writing, end of story. So that's why I'm trying to focus in on, you can contest that legal proposition, but I'm trying to fix precisely what it is that's contested factually. As to that issue, I wouldn't say end of story. I'd say, correct, technical violation, not necessarily fatal to any claim. But yes, a technical violation. As opposed to, he didn't disclose, he says he disclosed. That's all I'm saying. But back to the main point, which is, yes, we controverted some very basic issues that in our facts, our evidence, were not considered. They're not mentioned in the decision. And they're really material to the decision, and they should have caused the decision to go the other way. We have a delay of a year, at least, under anyone's calculation, the court's defendants. The court basically said, well, so what? In an affirmative defense, even a time-barred claim can be asserted. Not quite correct. A time-barred claim, when you're dealing with money and setoffs, a time-barred claim can set off another claim. A time-barred claim for rescission isn't revived. If one is not prompt, one hasn't met the elements required for rescission. If there's prejudice, in addition, you can't get rescission, even if you're within the statute of limitations. So collapsing this promptness requirement into the statute and saying, whenever someone is timely under the statute, you can get rescission, not true. We cite cases. There's a three-day right of rescission in many statutes. Mr. Wallace, I think Judge Owens was giving you a hint. I may be wrong about it. I'm not speaking for him, but I think we want you to talk about the controverted facts that pertain to waiver and ratification. Okay? Thank you. I'm sorry. Don't you think that's the strongest argument you have? I think... You ought to devote some time to it, I think. Yes. Okay. Take our lead on this one, counsel. I will. Okay. And without skipping over it, I would point out in our brief, we mentioned the court also weighed matters. It didn't just strictly decide things as a matter of law. It weighed evidence. And we gave you specific quotations as examples. But with respect to the issues of waiver and severance and ratification, they're kind of intertwined because factually they're intertwined. What we have is, after the basis for rescission came out, after new counsel was hired, his compensation is still confirmed. He's an equity owner. They refer to him as the shareholder. They refer to the 5% because at the original 10% to be split between these two, Burbeau and Otish. And the whole concept is, whenever possible, you should sever. In other words, the non-attorney shouldn't suffer because the attorney did something, unless it's completely impossible to sever. He was a beneficiary of the agreement, wasn't he? Yes. Burbeau? Yes. But if the defendants come back and say, Otish out, you know, Otish is out, but continues to perform as they asked him to perform, how should he not believe that he continues to have an interest here? He continues to expect compensation. He's working. And instead, the result is he did all this work under a reasonable expectation, and then the rug's pulled out from under him because Otish did something that Burbeau couldn't control. So Otish is performing services as Otish. Burbeau didn't purport to control him, to supervise him, to do anything with respect to these very severable things, legal services, business consulting. And if after the fact, particularly during the fact, during the services and afterwards, when new counsel's hired, the position is, yes, you have an equity interest. It's just not reasonable to come in after the fact and claim that Burbeau's position is so tainted, so tainted, and just concludes their area as a conclusion. Just throw that word in. Burbeau's claim is tainted by Otish. So if I can frame what I think is your best argument here, it's the idea that certain information about Burbeau's practices came to light and that the opposing side knew about it, yet didn't take action at that point. And they let Burbeau continue to perform the duties he was performing, correct? Yes. And that there's a factual dispute over that issue, correct? Frankly, I think it's undisputed in terms of this summary judgment. Well, I'm sure they... In favor of our position. No, I understand. I'm sure they have a different version of it. What I'm trying to crystallize here is that it seems to me that the big dispute, the real live dispute in this case, is that they knew information detrimental about Burbeau, and that your version of the facts is that they then didn't take action on that, and they allowed Burbeau to continue doing his work for the company, correct? Yes. Yes. And that you're trying to argue to this court that the district court, in throwing out the case at summary judgment, erred because there was a factual dispute. There's their version of the facts, and there's your version of the facts. Correct. And your argument today is that a jury should decide whose version of the facts as to this issue is correct, right? These issues, yes. For the yes. And specifically, I think the one we've been asking about is on the waiver rescission, the whole idea that yes, Burbeau may have done some things that were not proper, or at least that's what they believe, but they knew about it, and they didn't step up immediately and say, you're out of here, right? Correct. And that's why... Okay. Okay. I just want to... You only have a few minutes left. You said you wanted to reserve some time. Do you want to reserve your time? Yes, Your Honor. All right. Thank you. May it please the court. My name is Howard Fredman. I represent the appellees. I would like to jump first to the issue that Your Honor has focused on, the issue of waiver and of ratification and of estoppel. And I think that the California case law really addresses that. The case I would cite, and it is cited in our brief, is the case of Fergus versus Songer. And there the issue was specifically ratification, and the court basically says, you don't have ratification unless the party acts advisedly with full knowledge of rights. And that's an important point here. We're really not talking about facts. We're talking about knowledge of rights. We're talking about a mixed issue of law and fact. So if you go back to the citations which Mr. Bourbeau cites as to actual knowledge by our client of the issue, I looked at it and I pulled that out yesterday. The evidence is that Mr. Leslie Spring, a non-lawyer who was the technology person who invented the artificial intelligence algorithms and who patented it, that he, a non-lawyer, did research on his own. He did his Google research. And the question really appears in the record at AER 598 to 599. And the question was, so you did your research and you then came to an understanding that the addendum that you had signed with or on behalf of the company that it wasn't valid because Otish had violated his ethical obligations. Is that correct? And the response, no. I came to an understanding that that was a possibility. I didn't. I'm not an attorney. So, you know, I didn't know whether that was the case or not as a layperson. It was just something that I thought might be the case. Usually the discovery rule operates based on facts and being put on notice. He acknowledges, I wasn't sure that was the result, but I know the facts. I know that's a possibility. Isn't the responsibility at that point on him to consult with the new counsel that he had to find out what he could do as opposed to wait for a long time before taking any action? First of all, Your Honor, we're not talking about facts per se. We're talking about someone doing some Google research. And he was doing the research because he knew the certain facts. That's what triggered it. He believed it was unfair. And the heart of this case really is were these agreements that were entered into and on which Mr. Bourbeau seeks to rely fair and reasonable to the client. And we submit, we argued a number of points, but the district court relied on three things which now Bourbeau is seeking to take advantage of. One is undilutable stock. In other words, if the company were to go out to a third party and get additional financing, it should come out of somebody else. It should come out of the founders, the people who developed the technology and who supported the company. That was one point. I didn't hear a whole lot about undilutable stock in the preceding 15 minutes. What I heard about at our guidance was ratification and waiver. And I need to hear from you something that speaks to that. The argument being made is that your client had knowledge of what he needed to know to rescind and didn't give prompt notice of rescission, didn't give any notice of rescission for an extended period of time, and by his continued conduct after that, waived or ratified some agreement with Mr. Bourbeau. So undiluted stock doesn't answer that question. What does answer that question? Well, Your Honor, first of all, I would dispute that we're talking about rescission. What we're really talking about is voidability of contracts. I'll take your language. Same issue. I would say that the defenses, what we're really talking about voidability is an affirmative defense. So what Mr. Bourbeau is talking about is an affirmative defense to an affirmative defense. That you're barred from making that affirmative defense. That lost me. Well, he is claiming that Cognitive Code and the Cognitive Code defendants cannot rely on the voidability because they waited too long to raise it. And what I'm saying, and what I think the Fergus case says, you have to know, you have to be fully advised about your rights. And there's no requirement of diligence. There's no... That's not generally the case in the law. So if you're going to say there's no requirement of diligence, you're going to have to do some persuading of me at least. Okay. The first point I would make is you really have to look at the burden of proof because yes, it was summary judgment, but this is a unique form of summary judgment. Under Anderson v. Liberty Lobby, you have to look through the perspective of the burden of proof that's applicable, and you have to look at the standard of proof. The standard of proof is clear and convincing evidence. That's under the substantive law. And what the district court has to determine is whether clear and convincing effort, evidence has been presented to justify an award in favor of the plaintiff. And because there's a reversal of the burden of proof, and because it's a clear and convincing, that's the standard on summary judgment. He's arguing that I had the rights under the original stock purchase agreements. Those might be voidable because of Mr. Odish's failures. He can contest that, but for the moment, let's get past that. There comes a point in time when your client becomes aware of Mr. Odish's failures. After that point in time, your client continues to call upon Mr. Bourbeau to provide business consulting services without saying anything about the fact that by the way, we don't think you're a shareholder, and we're not proposing to pay you for this, but we're going to have you contribute your services anyway. Now, that's the case that's being made. I don't say that it's factually correct, but that's the case that's been made, and there has been a factual presentation to offer at least some support for that. Why does that open the door to summary judgment in your client's favor, dismissing that argument? Well, Your Honor, he had to come in with compelling evidence that in fact, there was a waiver, an estoppel, or a ratification, and all he came in was with deposition testimony that the technology officer for the company, the person who persuaded it, did some Google research and saw that there was an issue in his mind. And the issue you described earlier, while you were referring to Mr. Spring when you said this, was that something unfair had happened with regard to Mr. Odish and his representation. Are you saying that something more is required, and are you saying that he had to know of his right of rescission, or should have known of his right of rescission? Is that what he has to know? You're saying he has to know something beyond knowing that he wasn't treated fairly. I'm saying, yes, he had to know more, and if you look at Fergus, and I cite it in my brief, it's at 150 Cal App 4th at 571, and the court is dealing with the issue of ratification, but it's certainly the same issue as to waiver, it's certainly the same issue as to... Those facts are so bizarre that it's hard to apply them to this case. Well, the law of California is, it's an inherent element of ratification, and I would say of waiver as well, that the party to be charged with it must have fully known what he was doing. The very essence either of an election or ratification is that it is done advisedly with full knowledge of the party's rights. No evidence was presented that respondent expressly or impliedly consented to that agreement after learning the voidability. So you're saying that Fergus stands for the principle that he had to know... Of the voidability. And it was okay for him to continue to call upon Mr. Barbeau to contribute services, even though he, at that point, had reason to at least think it was unfair that Mr. Barbeau be a shareholder. Well, one of the problems with this area is it takes a deep dive into the law to really understand, A, the issue of voidability, what are the elements of voidability, because they're both procedural and substantive elements, and B, to what extent does it affect the business partner? And the client was not advised. He did not have any counsel at all other than Mr. Otish until the following January. And you're talking about, and you're not talking about anything that he called upon. Take the scenario I offered up. Assuming the facts, for which there is some evidence, it may not be compelling, but assume that, in fact, your client, having at least acknowledged awareness of facts that made him think it was unfair, continues to call upon Mr. Barbeau to contribute services. Isn't there something wrong with that? Well, Your Honor, factually, of course, we would dispute that. Sure, I accept that. I don't say it's a compelling case, but... The law is so strong regarding voidability, where business contracts that have been in place for 10 or 15 years have been voided after the fact, even though they were profitable. This sounds like a game of gotcha, if, in fact, you can know what you need to know and not act upon it for a period of time. Fully advised as to rights is different than believing something is unfair, and there's some Google law that says that maybe I can do something about it. And that's the difference we're talking about. Isn't the discovery rule that ordinarily operates under California law with regard to determining when a limitations period runs, for example, doesn't that put responsibility on the person who has suspicions to do something, as opposed to leaving blinders on and taking advantage of another party to the transaction, which is the factual scenario offered up by a plaintiff, which so far you're not denying the possibility of that factual scenario. You deny the fact of it, but you don't deny that, in fact, that scenario was painted for the district court. You're telling us that the law says it doesn't matter, and I'm not so sure. Well, I understand Your Honor's saying... And just, I mean, Fergus's one case, I'm not sure I read it in the same way that you do. There are lots of other cases about the discovery rule, and why shouldn't we look to those? Your Honor, when we're dealing with the issue of voidability, when we're dealing with the inherent unfairness and unreasonableness of a contract, I think you're, that colors... So what's fair about treating Mr. Barbeau in the way he said he was treated, which is with your client having suspicion, they continue to call upon him for services, knowing that eventually they might take the position, just might, but might take the position that he doesn't have any interest, and yet still call upon him. And that's fair? Well, again, we say that certainly Mr. Barbeau had notice of the unfairness of the contracts that he was relying on. Certainly those contracts favored him as well as Otish. And certainly all the rights that Mr. Barbeau is claiming are subject to the same voidability defense. And beyond that, I would say there has to be one burden of proof that applies to those contracts, to the voidability of those contracts. And that burden of proof is to establish that they're fair and reasonable, and that the client was fully advised when they were entered into. That's an issue of law, clear, fair, and reasonable. And that was established by the, by Ferguson versus Yispan. That's an issue of law, whether it's fair and reasonable. The court properly relied on three elements. You know, what I haven't heard in this minute of urge is an answer to my question. You're not denying it wasn't fair. The question I posed to you, was it fair for your client to do that? And you haven't answered that question. You're trying to say, well, the other guy's unfair too. So, tough, tough beans. That's not, that's not an answer to my question. The factual record was that the defendant was, was, was taking advantage, knowing full well that, that they have the right at any time to void it. Yes, I would agree with you that that's unfair. Okay, take a half step back, knowing that, in fact, that if they looked into the, to the situation, they might reach that conclusion. Your client acknowledges suspicion. Suspicion imposes some duty to figure out what you're going to do. It doesn't suggest you can sit on it for over a year. I, I would differ, Your Honor. I would say that the law requires more than suspicion, more than inquiry notice. It requires, essentially, full advisement of your rights. And that is the law in California on this precise issue. And did anything prevent your client from consulting with counsel to obtain that full advisement? Well, the problem was, was one of money. They had lawyers that had not been paid. In fact, that's why they went to Otish. And that's why they asked Otish not to go back to the lawyers who had originally incorporated the company. They said, we owe them money. We don't have the money to pay for a lawyer. All right, thank you very much, counsel. Now, for rebuttal, you see your clock, so let's try to, you've heard the argument, let's focus on those issues. Yes, Your Honor. A basic point in the law is that inquiry notice, as, as the court has pointed out, triggers further duties. Inquiry notice can't be put in your back pocket and ignored, especially if you continue to do business. Especially if there's some further consideration, some further activity. One- What, what in the record is there to show that he had a reason to believe that the contract was voidable with regard to Berbeau? We, we summarized them, reply brief at 11, I cited- Briefings. But, but that really was what he knew about Otish and the, and what happened at the inception of the contract, right? His, his undue influence, right? Yes. Is there a difference with regard to how, how that should be viewed with regard to Berbeau? I mean, what did, what did Spring and the other people at Cognitive know to put them on notice that the contract was voidable as to Berbeau? Or is it the same with regard to Berbeau and Otish? Well, I think they overlap. And let me, let me just point out a couple of facts because we're focused on one piece of evidence cited by Mr. Fred Gant. However, there are a number. The CEO Googled, he told his wife, his co-founder, his wife went to advisors, all of this is what we're labeling inquiry notice. The advisors were not lawyers, right? Non-lawyers. And not only do we have inquiry notice, but we have continued course of conduct. It's one thing to, in the abstract, say inquiry notice triggers a duty to look further. It's another if you continue to do business that you don't look further. Or even if you do look further and you continue to do business and later pull out this rug from under Berbeau, it's particularly unfair. So, so well established inquiry notice can't be ignored. You've got to, you have duties when that happens. Plus, we cite the actual knowledge as to Otish. They certainly had the opportunity to go to counsel and say, well, what about Berbeau's portion of the contract or Berbeau's involvement? Is that legal? And one could cite to the fair case, for instance, which counsel cited after doing some basic research. But that wasn't done, apparently. So it was just ignored. And so why should Berbeau suffer from that decision to ignore the inquiry notice? The person who does the ignoring of that inquiry notice should bear the risk of the consequences for ignoring that inquiry notice. Also, there was mention of this provision for undiluted full stock. Well, in the trial, there are alternatives. We cited quantum merit as an important role here as a remedy available for the court. The court can say, okay, this provision is tainted, this provision is not tainted. We're throwing this one out, we're keeping the other one, or I'm going to go with quantum merit. There's evidence of that. All right, thank you counsel, you're over time. We appreciate your argument in this case. The arguments in this case are submitted.
judges: Clifton, Owens, Antoon